

**FILED**

MAY 02 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| THOMAS E. TUCKER, JR., <br><br> Petitioner, <br><br> vs. <br><br> LYNN GUYER,[1] WARDEN OF MONTANA STATE PRISON; TIM FOX, MONTANA ATTORNEY GENERAL, <br><br> Respondents. | Cause No. CV 18-165-M-DLC-JCL <br><br> ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Thomas E. Tucker, Jr.'s application for writ of habeas corpus under 28 U.S.C. § 2254. Tucker is a state prisoner proceeding pro se.

On October 29, 2018, this Court issued an Order directing Tucker to show cause as to why his petition should not be dismissed as time-barred and/or procedurally defaulted. (Doc. 3.) After requesting two extensions of time to comply with the Order, Tucker filed his response. (Doc. 9.)

---

[1] The Clerk of Court will be directed to amend the caption in this matter to reflect that Lynn Guyer is the current warden of the Montana State Prison. In a federal habeas petition, a state prisoner must name the state officer having custody of him as the respondent. *Ortiz-Sandoval v. Gomez*, 81 F. 3d 891, 894 (9th Cir. 1996) (citing Rule 2(a), 28 U.S.C. foll. §2254).

1

As explained herein, Tucker's petition is barred by the federal statute of limitations and should be denied and dismissed with prejudice.

## I. Procedural History

Following a trial in Montana's Fourth Judicial District, Missoula County, a jury found Tucker guilty of 30 counts of Sexual Abuse of Children. On March 2, 2006, the district court sentenced Tucker to ten years on each count, with all but thirty years suspended. See, (Doc. 1 at 1); see also, *State v. Tucker*, 2008 MT 273, ¶¶ 10-12, 345 Mont. 237, 190 P. 3d 1080.

Tucker timely filed a direct appeal, arguing: (1) the state district court erred in concluding there was sufficient probable cause to support the application for search warrant and, accordingly, erred in denying Tucker's motion to suppress; (2) the state district court abused its discretion in failing to conduct an evidentiary hearing on Tucker's motion to suppress; and, (3) trial counsel provided ineffective assistance for failing to request a hearing on the motion to suppress. *Tucker*, 2008 MT 273, at ¶ 2.

On August 5, 2008, the Montana Supreme Court affirmed Tucker's convictions. *Id.* at ¶¶1, 47. The Court determined the state district court properly denied Tucker's motion to suppress because the application for the search warrant demonstrated the requisite probable cause. *Id.* at ¶27. Additionally, the Court found the district court did not err in failing to hold a hearing on the motion to

2

suppress and, correspondingly, that trial counsel did not render ineffective assistance for failing to request a hearing. *Id.* at ¶ 38, 46.

Tucker indicates he attempted to file a petition for postconviction relief, but due to a previous order entered in the state district court, his pro se filings were rejected. (Doc. 1 at ¶ 5.) Tucker also states the district court claimed it did not receive his petition until after the filing deadline of August 5, 2009 and was deemed untimely. *Id.*[2] It does appear that on April 8, 2008, the state district court entered an order striking Tucker's pro se filings because at that time he was represented by appellate counsel. See, (Doc. 9-1 at 108.) But, it also appears a similar order prohibiting Tucker's pro se filing was entered by the district court on November 29, 2005.[3] Tucker was also advised that even if an order was not in place preventing Tucker's filings, his postconviction petition was, nonetheless, more than one week late. *Id.*

Tucker asserts the Montana Supreme Court then denied him an appeal of his postconviction petition based upon the district court's refusal to accept his pro se petition. (Doc. 1 at ¶ 6.) This Court has been unable to locate any order to that effect in the Montana Supreme Court docket.

Apparently, in 2016, Tucker again attempted to file document(s) with the

---

[2] See, Mont. Code Ann. § 46-21-102(a) (providing that a petition for postconviction relief may be filed within 1 year of the date on which a conviction becomes final).
[3] See, letter from Missoula County Clerk of Court, (Doc. 9-1 at 111.)

3

state district court. The district court entered an order directing that Tucker's underlying criminal case be closed and designating Tucker a vexatious litigant, requiring him to obtain approval of the court prior to any future filing. (Doc. 9-1 at 109-110.)

On December 26, 2017, Tucker petitioned the Montana Supreme Court for habeas review. Tucker's petition was denied. *Tucker v. Fletcher*, OP 17-0752, Or. (Mont. Jan 9, 2018).[4] While Tucker claimed he possessed "new evidence," the Court found his arguments to be unsupported. Instead Tucker simply asserted he was the victim of a "colossal conspiracy" and the judicial system prevented him from having a fair trial. *Id.* at 2. Moreover, despite claiming he received a facially invalid sentence, Tucker failed to develop the argument and simply alleged he was wrongfully convicted. *Id.* The Court determined Tucker's petition was barred by Mont. Code Ann. §46-22-101(2),[5] because the petition sought to challenge aspects of the criminal proceeding. Thus, state law precluded the Court from reviewing issues that were, or could have been, raised on direct appeal. *Id.*

According to Tucker, he attempted to seek an order from the Montana Supreme Court directing the district court to accept his postconviction filings. This

---

[4] All state court briefing and orders available at: https://supremecourtdocket.mt.gov/ (accessed April 30, 2019).
[5] "The writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal."

4

Court has been unable to locate any documents in the Montana Supreme Court docket that reflects such a request.

## II. Claims

In his petition, Tucker advances claims concerning the search warrant, purportedly illegal searches and seizures, his pre-trial incarceration, alleged speedy trial violations, violations of his right to a fair trial, denial of counsel, ineffectiveness of trial and appellate counsel, malicious prosecution, prosecutorial misconduct, *Brady* violations,[6] outrageous governmental misconduct, inability to collaterally attack his conviction, judicial bias, and judicial prejudice.[7]

## III. Analysis

### A. Exhaustion/Procedural Default

It appears Tucker attempted to raise the bulk of the claims he advances in the instant petition with the Montana Supreme Court in his 2017 petition. In his response to this Court's order to show cause, he does not attempt to argue that M.C.A. § 46-22-101(2) was not consistently applied. Thus, it appears the state statute constituted an adequate and independent basis for the denial of Tucker's habeas petition. See, *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005).

---

[6] A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[7] For a more detailed explanation of Tucker's claims, see (Doc. 3 at 3-4); see also (Doc. 1.)

5

It is unclear what claims Tucker attempted to present in the 2009 postconviction petition he filed with the district court. Additionally, a review of the exhibits attached to Tucker's response to the order to show cause, indicates there was at least one additional court order regarding limitations placed on Tucker's pro se filings. There is not enough information before the Court to make a determination whether or not Tucker attempted to exhaust his present claims but was prevented by the state district court from doing so. But even if there were some avenue for this Court to set aside the procedural bar before Tucker, as explained below, his federal habeas petition is untimely by nearly nine years without excuse.

### B. Federal Statute of Limitations

A one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. Where a petitioner seeks direct review from the highest state court, "the period of 'direct review' in 28 U.S.C. 2244(d)(1)(A) includes the period within which a petition can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually filed such a petition." *Bowen v. Roe*, 188 F. 3d 1157, 1159 (9th Cir. 1999); *Zepeda v. Walker*, 581 F. 3d 1013, 1016 (9th Cir. 2009). Tucker filed a timely notice of appeal in state court, thus, his conviction became final when the 90-day time period for filing a petition for writ of certiorari concluded, that is, on

Tuesday, November 4, 2008. Accordingly, Tucker should have filed his federal petition on or before Wednesday, November 4, 2009. But he filed in this Court on September 17, 2018, eight years and ten months too late.

### i. Statutory Tolling

The one-year filing deadline is statutorily tolled during the time in "which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *Lott v. Mueller*, 304 F. 3d 918, 921 (9th Cir. 2002).

Tucker does not argue that he is entitled to statutory tolling.[8] As explained in this Court's prior order, because Tucker's 2009 state postconviction petition was not properly filed under state law, he is not entitled to statutory tolling. See, (Doc. 3 at 5); see also, *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005). Likewise, neither Tucker's 2017 state habeas filing nor his attempts in 2018 for renewed postconviction review in the Montana Supreme Court serve to excuse his untimely filing in this Court. Application for state review filed after the statute of limitations ended cannot serve to toll or revive the limitations period. See, *Ferguson v. Palmateer*, 321 F. 3d 820, 823 (9th Cir. 2003)("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state

---

[8] See e.g., (Doc. 9 at 1)(Tucker fails to argue this Court's calculation of federal filing deadlines is incorrect).

7

petition was filed"); see also, *Jiminez v. Rice*, 276 F. 3d 478, 482 (9th Cir. 2001). Tucker is not entitled to statutory tolling.

### ii. Equitable Tolling

In certain limited circumstances, the one-year filing deadline may be equitably tolled. *Holland v. Florida*, 560 U.S. 631 (2010); see also, *Calderon v. United States Dist. Ct. (Beeler)*, 128 F. 3d 1283, 1288 (9th Cir. 1997)(recognizing AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar)(overruled in part on other grounds). A petitioner is entitled to equitable tolling if he can demonstrate that: "(1) he has been pursuing his rights diligently and (2) some extraordinary circumstances stood in his way" to prevent him from timely filing a federal habeas petition. *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F. 3d 796, 799 (9th Cir. 2003); see also, *Waldron Ramsey v. Pacholke*, 556 F. 3d 1008, 1011 (9th Cir. 2009)(characterizing the Circuit's application of equitable tolling doctrine as "sparing" and a "rarity."). Additionally, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *Bryant v. Arizona Attorney General*, 499 F. 3d 1056, 1060 (9th Cir. 2007).

Tucker seems to allege dyslexia and learning disabilities, which affect his

8

reading and writing comprehension, constituted an extraordinary circumstance. See, (Doc. 9 at 1); see also, (Doc. 9-1 at 1-8)(a 2018 letter from Erika Burleigh reflecting her belief Tucker is dyslexic, as well as school and ophthalmology records from the 1980's reflecting a diagnosis of dyslexia as well as learning difficulties). Cognitive impairments may provide a basis for equitable tolling if the impairment caused the untimely filing. *Spitsyn*, 345 F. 3d at 799.

The Ninth Circuit established a two-part test for equitable tolling in this circumstance:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
>   a. petitioner was unable rationally or factually to personally understand the need to timely file, or
>
>   b. petitioner's mental state rendered him unable personally to prepare a habeas petition and to effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.
>
> To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing of his own, or finding and utilizing assistance to file. The "totality of the circumstance" inquiry in the second prong considers whether petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The

9

> petitioner therefore always remains accountable for diligence in pursuing his or her rights.

*Bills v. Clark*, 628 F. 3d 1092, 1099-1100 (9th Cir. 2010)(emphasis in original).

Under *Bills*, Tucker has failed to establish the existence of an impairment which would establish he was severely mentally impaired. As set forth above, in the years following his 2006 sentencing, Tucker was able to file various documents pro se in both the state district court and Montana Supreme Court.

Moreover, Tucker was party to two separate federal civil actions. In March of 2007, Tucker appeared before this Court for a bench trial. See, *Tucker v. Evans, et al.*, CV-04-210-M-JCL. In the Findings of Fact and Conclusions of Law issued in that matter, it was noted that Tucker was actively engaged in various litigation-related activities:

> During the pertinent time frame, [Tucker] was involved in the following four proceedings: (1) his state court criminal case, *State v. Tucker*, DC-03-355, Fourth Judicial District Court, Missoula County, Montana; (2) a civil action in the United States District Court for the District of Montana, *Tucker v. Huntsman et al.*, CV-05-193-M-DWM; (3) a Montana state court case involving a challenge to the public defender system of the state of Montana, and; (4) this case.

See, *Tucker v. Evans, et al.*, CV-04-210-M-JCL, Find. & Concl. (Doc. 12)(filed March 19, 2007). While Tucker was represented by counsel in *Tucker v. Evans*, he proceeded pro se in *Tucker v. Huntsman et al.*, CV-05-193-M-DWM. Because Tucker was capable of preparing state and federal filings during the limitations period, it follows that he was capable of preparing and filing a federal habeas

10

petition during this same period. In short, Tucker has not demonstrated that his dyslexia and/or learning disabilities prevented him from understanding the need to file or effectuating filing in this Court. See, *Bills*, 628 F. 3d at 1100.

Additionally, under *Bills*, this Court is to look at the circumstances to discern whether or not Tucker was diligent in his attempt to comply with federal filing requirements. *Bills*, 628 F. 3d at 1101. But, after the state district court rejected Tucker's postconviction petition in August of 2009, he failed to file in this Court for over nine years. Thus, even if Tucker's learning disabilities were to serve as an extraordinary circumstance, his failure to act with the requisite diligence in attempting to comply with his federal filing deadline precludes application of the equitable tolling doctrine.

Additionally, Tucker cites various events that occurred leading up to and immediately following his criminal trial that he believes constitute extraordinary circumstances. Tucker takes issue with the performance of all three of his appointed attorneys: Colleen Ambrose, (doc. 9-1 at 9-12); Margaret Borg, (*id.* at 12-14); and, Michael Bailey (*id.* at 14-17); see also, (doc. 9 at 1, 3-4, 5-8). Tucker also advances concerns regarding: the state's purportedly unlawful seizure of legal and research materials from Tucker's jail cell in 2003 (*id.* at 2-3), see also (doc. 9-1 at 20-27); suppression of allegedly exculpatory material, (doc. 9-1 at 52-60); an alleged *ex parte* communication between defense counsel, the state, and the trial

11

judge on August 16, 2005 (doc. 9 at 4, 7-8); see also (Doc. 9-1 at 17; 97-99); and, bias on the part of both trial court judges involved in the criminal proceedings. (Doc. 9 at 5, 8-9.)

But none of these acts of which Tucker complains, spanning an approximate time period from 2003 to 2006, prevented Tucker from filing in *this* Court. See, *Holland*, 560 U.S. at 649; *Pace,* 544 U.S. at 418. Or, to put it another way, Tucker has wholly failed to demonstrate a "causal connection" between the objectionable acts of which he complains and his failure to timely file his federal petition. See, *Bryant*, 499 F. 3d at 1060. Accordingly, Tucker is not eligible for equitable tolling.

### iii. Actual Innocence

Finally, "an actual-innocence gateway claim" may serve as an exception to AEDPA's limitations period. *McQuiggin v. Perkins*, 569 U.S., 383, 386 (2013). "To present otherwise time-barred claims in federal court, a petitioner must produce proof of his innocence that is sufficient to convince a federal court that a failure to entertain his claim would constitute a fundamental miscarriage of justice." *Lee v. Lampert*, 653 F. 3d 929, 932 (9th Cir. 2011)(en banc).

A petitioner must "support his allegations of constitutional error with new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial.

12

*Schlup v. Delo*, 513 U.S. 298, 324 (1995). Faced with an actual-innocence claim, a federal habeas court should count unjustifiable delay on a petitioner's part, "not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 569 U.S. at 385. In order to qualify for this exception and pass through the gateway, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011). This is a high threshold that is rarely met." *Id.* at 945; see also, *McQuiggin*, 569 U.S. at 386 ("tenable actual-innocence gateway pleas are rare.").

Tucker claims reliable evidence- including that which was suppressed and/or unlawfully seized by the State in 2003- supports his claim of actual innocence. (Doc. 9 at 9-10); (Doc. 9-1 at 52-60.) Additionally, Tucker provides documents from a 2003 Missoula County small claims matter (Doc. 9-1 at 159) and a 2003 Missoula County Justice Court criminal matter (*id.* at 160-161), along with his own statement surrounding those 2002 and 2003 events. *Id.* at 162-167. Tucker also includes affidavits from Nancy Jane Smith and Gary Smith prepared in 2009 regarding events and interactions they observed between Tucker and his ex-girlfriend from June 2001 to January 2002. *Id.* at 153-156. Additionally, Tucker supplies affidavits prepared in 2012 from Stanley Cooper, Anna Rime, and Robert Rime regarding the 2001-2002 time period and their corresponding observations.

*Id.* at 146-152. Tucker also submits his own affidavit explaining his perception of the underlying felony criminal matter and failings of the justice system, (*id.* at 135-145), in addition to affidavits from his parents, Thomas E. Tucker, Sr. and Shirley Tucker, raising similar concerns. *Id.* at 114-133. Tucker reiterates his claims that trial counsel provided ineffective assistance and had he been provided effective counsel he would not have been convicted. (Doc. 9 at 11-13.)

But Tucker's claims and supporting evidence fails to satisfy the actual innocence standard under *Schlup*. None of the evidence proffered by Tucker is "newly discovered evidence." *Schlup*, 513 U.S. at 324. Everything Tucker presents to this Court was either previously presented at trial or was known by Tucker at the time of trial. Moreover, the reliability of the bulk of Tucker's "newly discovered evidence" is questionable- it consists primarily of his own conclusory statements or of those of individuals, including family and friends, who have a vested interest in the outcome of these proceedings. Thus, the evidence falls far short of establishing the applicability of the *Schlup* gateway in the instant case. Tucker has not presented this Court with evidence that is so strong that it is more likely than not that no reasonable juror would have convicted Tucker in light of this new evidence. *Id.* at 327.

Finally, this Court cannot ignore the delay that has occurred; it is an additional factor that weighs against Tucker in his procedural claim of actual

innocence. *McQuiggin*, 569 U.S. at 385.  In sum, Tucker is not entitled to review of his petition under the actual innocence exception.

## IV.   Conclusion

Tucker's petition is untimely.  Tucker has failed to demonstrate he is entitled to statutory tolling, equitable tolling, or the application of the *Schlup* gateway. Thus, he has failed to excuse his untimely filing. Accordingly, his petition should be denied and dismissed with prejudice.

## V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-141(2012) (quoting *Slack*, 529 U.S. at 484).

15

Tucker has not made a substantial showing that he was deprived of a constitutional right. His claims are time-barred without excuse. There are no close questions and there is no reason to encourage further proceedings in this Court. Furthermore, reasonable jurists would find no basis to dispute this Court's procedural ruling regarding untimeliness. A certificate of appealability should be denied.

Based on the foregoing, the Court makes the following:

## ORDER

The Clerk of Court is directed to amend the caption in this matter to reflect Lynn Guyer as the current warden of the Montana State Prison.

## RECOMMENDATION

1. The Petition (Doc. 1) should be DENIED and DISMISSED with prejudice.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Tucker may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1).[9] Failure to timely file written objections may bar a de

---

[9] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act

16

novo determination by the district judge and/or waive the right to appeal.

Mr. Tucker must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 2nd day of May, 2019.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

---

within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Tucker is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

17